A. D. KENAMOND, Judge.
Claimant’s petition, seeking an award of $2,000.00, filed April 6, 1950, recites that during the early months of 1949, at re *176 quest of the defendant, petitioner gave the defendant a right-of-way over a piece of property belonging to the petitioner and situate in Ashford, or Ashford Springs, Boone county, and that in return defendant agreed to make necessary ditches and take the necessary draining measures and precautions so that water accumulating on and near said right-of-way, and flowing off a certain hill adjacent thereto, would not cause damage to the remainder of petitioner’s property. Defendant, not regarding his duties and although often promising to do so, has failed to comply, and still fails to comply, with his agreement, and by reason of such failure petitioner has suffered the following damages and injuries: Standing water has accumulated upon and about said right-of-way and has seeped into the petitioner’s well causing the water therein to be ruined; petitioner’s barnyard has been flooded and rendered practically worthless to him; water has seeped into the foundations and underneath petitioner’s house and is causing the foundations to rot; water has flowed and seeped into and about petitioner’s garage, and made it impossible for petitioner to use the garage for storing his automobile therein; accumulated and running water has pushed gravel and sediment onto petitioner’s adjacent property and road thereon, blocking petitioner’s entrance to his garage and making the same inaccessible for storing of his automobile, all of which injuries have caused petitioner great inconvenience and expense and will continue to cause same until the condition is remedied, and said damages have cause permanent depreciation in the value of petitioner’s property, all to the damage of the petitioner in the amount of $2,000.00.
On October 10, 1950, six days prior to a hearing of the case, the members of the court went to Ashford, or Ashford Springs, in Boone county, and viewed the premises of claimant Harry W. Beard, and the state road in part adjacent thereto and in part cutting across a comer of his lots. During the day immediately preceding the viewing there had been fairly steady rainfall. The court noted the drainage provisions and each of the two points at which the state road commission had planned to place a pipe underneath the roadway, and the large culvert, *177 at the foot of the hill, installed at the request of the claimant, who objected to the two pipes as originally planned.
From a view of the claimant’s premises several of the alleged damages were not apparent. However, a road fill at the abutment to a bridge over Lick Creek did appear to make ingress to claimant’s garage or barn more difficult. Also, standing water was noted in a ditch about twenty feet above the claimant’s well and just below the state road, and the outlet from the ditch had been blocked by the trunk of a large felled tree and, further along toward Lick Creek, by the road fill at the bridge abutment.
The hearing of this claim on October 16, 1950, threw a different light on the situation in controversy.
The claimant Harry W. Beard then testified that he first talked to Roy Sutphin, who was the first representative of the state road commission to whom he talked about a right-of-way through his lots in Ashford, or Ashford Springs, in June 1949. In this conversation reference was made to a blueprint showing a ford in the creek, whereupon the claimant said that he would give the right-of-way if the state road commission put a bridge across the creek so everybody could use it. Later another representative of the state road commission made some trips to discuss the right-of-way and on the last of such trips claimant said “The only hang-back was to take care of the water.”
It thus appears that the claimant during these conversations overlooked the fact that he and Mary E. Beard, his wife, had on January 19, 1949 signed and acknowledged before W. W. Bucklow, a Notary Public for the county of Boone, an option giving the state of West Virginia, by the state road commission, the right to purchase from the said Harry W. and Mary E. Beard, within the term of six months from date thereof, the tract of land shown on the plans and profile of state road project No. 7248 (sometimes referred to as the Ashford-Brushton Road) Boone county. Under this option, acknowl *178 edged by Harry W. and Mary E. Beard under the hand of a notary public on January 19, 1949, and for the good and sufficient consideration of one dollar ($1.00) and agreement of the state road commission to build a stringer bridge across Lick Creek, Harry W. and Mary E. Beard covenanted and agreed, upon being notified that the state road commission had elected to exercise its right under the option, that the state road commission should be permitted to take possession of said land, and further covenanted and agreed to execute and deliver deed of general warranty of title to the state of West Virginia conveying the said land and to execute a release, releasing the state of West Virginia from any and all claims for damages to the residue of the said land that may be occasioned by the construction and maintenance of a state road over and upon the tract of land therein described.
A deed, for the consideration mentioned in the option, dated January 19, 1949, giving the release from any and all claims for damages as set forth in said option, and conveying 13,680 square feet, more or less, being a portion of the land conveyed unto Harry W. Beard by deed of March 5, 1919, was prepared by the state road commission for the signature of Harry W. and Mary E. Beard.
The deed was not signed. Accordingly the state road commission sent by registered mail to Harry W. and Mary E. Beard a notice of acceptance, dated June 29, 1949, of the option granted January 19, 1949. Harry W. Beard signed a return receipt showing delivery of the registered notice of acceptance on July 1, 1949.
On July 19, 1949, the state road commission entered on the property involved in this case and began work on the road to be built on and adjacent to the said property. The road was finished sometime in March 1950, and the bridge across Lick Creek had been built.
Sometime after the road construction was begun Mr. Beard, the claimant, protested that under the plans of the state road *179 commission the drainage would be faulty. The state road engineer, at the claimant’s request, then eliminated two 18 inch pipes to he placed under the road at points above lots 3 and 5 of his property, placed another pipe, about 200 feet farther up the road, well beyond his property, and built a 15 inch culvert leading from the drainage ditch between the road and hillside, under the old railroad at the foot of the hill, draining into Lick Creek.
The claimant still protested that drainage water has caused him to lose the use of his well on some three occasions for a day or two on each occasion. Harry W. Beard seems disinclined to make any extravagant statements as to what would be required to correct the situation of which he complains. It would be necessary only to open and continue the ditch above his well to an outlet into Lick Creek and to do some grading, allowing easier ingress into his garage or barn. Claimant thinks the state road commission should do this and the respondent holds that the road commission has no such obligation.
Under the terms of the option contract we are of the opinion that the respondent has no such obligation and is not liable for the claim made in this case. An award is therefore denied.